United States District Court

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| PARK TOWNSEND, LLC; GKB DEVELOPMENT CO., LLC; WARREN L. BRESLOW TRUST; and WARREN L. BRESLOW, an individual and Trustee of the Warren L. Breslow Trust,<br><br>Plaintiffs,<br>v.<br><br>CLARENDON AMERICA INSURANCE COMPANY and DOES 1–500, inclusive,<br><br>Defendants. | Case No.: 12-CV-04412-LHK<br><br>ORDER GRANTING MOTION TO DISMISS |

Plaintiffs Park Townsend, LLC ("Park Townsend"), GKB Development Co., LLC, Warren L. Breslow Trust, and Warren L. Breslow (collectively, "Plaintiffs") bring this insurance coverage action against Clarendon America Insurance Company ("Clarendon") and Does 1 through 500 (collectively, "Defendants") alleging breach of contract and breach of the implied covenant of good faith and fair dealing. In addition, Plaintiffs seek declaratory relief. Pursuant to Civil Local Rule 7-1(b), the Court finds this matter appropriate for determination without oral argument. Accordingly, the January 3, 2013 hearing on Defendants' Motion to Dismiss is VACATED. The

United States District Court

case management conference set for January 3, 2013, remains as set. Having considered the submissions of the parties and the relevant law, the Court hereby GRANTS Defendants' Motion to Dismiss with leave to amend.

## I. BACKGROUND

### A. Factual Allegations

This diversity action arises from Defendants' alleged breach of its duty to defend Plaintiffs in an ongoing construction defect lawsuit. Park Townsend was the developer of a 98-unit condominium construction project in San Jose, California, commonly known as the Park Townsend Development. First Am. Compl. ("FAC") ¶ 12, ECF No. 1-3. In 2001, Park Townsend entered into an insurance contract with Defendants. FAC ¶ 11 (citing Clarendon Policy No. WT0991170 (the "Policy")).[1] Although the Policy states that Clarendon "will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies," ECF No. 1-3, at 58, the Policy also includes exceptions for coverage. *See, e.g.*, *id.* at 60–61.

On August 1, 2008, the Park Townsend Homeowners Association ("PTHA") filed suit against Plaintiffs in Santa Clara Superior Court (the "Underlying Action") alleging numerous violations of building standards and construction defects involving the construction of the condominiums and the common areas. FAC ¶ 15. Clarendon agreed to defend Plaintiffs in the Underlying Action "on account of alleged liability caused by an occurrence falling within and/or potentially falling within the coverage defined in the policy," subject to a reservation of rights. FAC ¶¶ 16, 35. Clarendon then hired the law firm of Green & Hall to defend Plaintiffs in the Underlying Action.[2] FAC ¶ 27.

---

[1] In addition to Park Townsend, all of the other plaintiffs in this action "were either identified as the named insured or identified as additional insureds under the Policy." FAC ¶ 11.

[2] Clarendon is not a party in the Underlying Action. Clarendon's duty to defend Plaintiffs arises from the Policy. *Montrose Chemical Corp. v. Superior Court*, 6 Cal. 4th 287, 295 (1993) ("'[A] liability insurer owes a broad duty to defend its insured against claims that create a potential for indemnity.'") (quoting *Horace Mann Ins. Co. v. Barbara B.*, 4 Cal. 4th 1076, 1081 (1993)).

On November 9, 2011, Plaintiffs wrote to Clarendon to demand the appointment of independent counsel under California Civil Code Section 2860.[3] FAC ¶ 17. Clarendon denied Plaintiffs' request. FAC ¶ 18.

On or around November 23, 2011, Clarendon provided Plaintiffs with a summary of defects alleged in PTHA's Defect List and Cost of Repair, itemizing alleged defects that Clarendon contended are covered and not covered by the insurance policy. FAC ¶ 19. In this correspondence, Clarendon notified Plaintiffs that approximately 40% of the costs of repair would not be covered under the Policy, though later amended this amount to approximately 49.51% based on a revised Defect List and Cost of Repair. FAC ¶¶ 19, 21. Given the disparity between covered and non-covered repair costs, Clarendon stated that it would "continue to defend Plaintiff[s] through Clarendon's appointed defense counsel Green & Hall," FAC ¶ 19, but reserved its right to recover any indemnity and defense costs from Plaintiffs, FAC ¶¶ 20, 21. Clarendon also stated that Plaintiffs could reject a settlement offer and assume their own defense at their own expense. FAC ¶ 21.

Plaintiffs responded to Clarendon's reservation of rights by alleging that Clarendon created a conflict of interest between the insurer and insureds. FAC ¶ 22. According to Plaintiffs, "Green & Hall is currently defending the Underlying Action in a manner calculated to assist Clarendon in its coverage position." FAC ¶ 27. Consequently, Plaintiffs retained independent defense counsel, Alyssa B. Klausner. FAC ¶ 32. Plaintiffs now seek to have Clarendon pay Ms. Klausner's fees, as well as to allow Ms. Klausner to play an active role in the defense of the Underlying Action. FAC ¶¶ 32, 33.

**B. Procedural History**

[3] Plaintiffs allege that "personal counsel," presumably Alyssa B. Klausner, wrote to Clarendon to "demand the appointment of Independent . . . Counsel under Civil Code Section 2860." FAC ¶ 17; *cf.* FAC ¶ 32 (alleging that Plaintiffs hired Ms. Klausner "in an attempt to mitigate the harm caused by the conflict of interest"). The fact that Plaintiffs appear to have hired independent counsel before many of the incidents that gave rise to the alleged conflict of interest undermines the plausibility of Plaintiffs' claims.

Plaintiffs filed this action against Defendants in the Superior Court of California for the County of Santa Clara on July 13, 2012, ECF No. 1-2, and subsequently filed the First Amended Complaint on July 20, 2012. *See* ECF No. 1-3. Plaintiffs' FAC alleges three causes of action: (1) declaratory relief; (2) breach of contract – failure to defend; and (3) breach of the implied covenant of good faith and fair dealing – failure to defend.

Clarendon removed the case to this Court on August 22, 2012. ECF No. 1. Clarendon then filed a Motion to Dismiss Plaintiffs' First Amended Complaint based on Rule 12(b)(6) of the Federal Rules of Civil Procedure. Mot. to Dismiss Pl.'s FAC ("Mot."), ECF No. 9. Plaintiffs filed a timely opposition to the motion, *see* Pl.'s Opp. to Defs.' Mot. to Dismiss FAC ("Opp'n"), ECF No. 11, to which Clarendon filed a timely reply, *see* Defs.' Reply Supp. Mot. to Dismiss P1.'s FAC ("Reply"), ECF No. 12. On November 14, 2012, Clarendon also filed a Counterclaim for Declaratory Relief, ECF No. 15, to which Plaintiffs filed an Answer, ECF No. 16. Presently before the Court is Clarendon's Motion to Dismiss Plaintiffs' First Amended Complaint. ECF No. 9.

## II. LEGAL STANDARDS

### A. Rule 12(b)(6)

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss an action for failure to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citation omitted). For purposes of ruling on a Rule 12(b)(6) motion, the Court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

Nonetheless, the Court need not accept as true allegations contradicted by judicially noticeable facts, and the "[C]ourt may look beyond the plaintiff's complaint to matters of public

United States District Court

record" without converting the Rule 12(b)(6) motion into one for summary judgment. *Shaw v. Hahn*, 56 F.3d 1128, 1129 n.1 (9th Cir. 1995); *see Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002); *Schwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000). Nor is the Court required to "'assume the truth of legal conclusions merely because they are cast in the form of factual allegations.'" *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (per curiam) (quoting *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981)). Mere "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004); *accord Iqbal*, 556 U.S. at 678 (stating that "a complaint [does not] suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'") (internal citation omitted). Furthermore, "a plaintiff may plead [him]self out of court" if he "plead[s] facts which establish that he cannot prevail on his . . . claim." *Weisbuch v. Cnty. of L.A.*, 119 F.3d 778, 783 n.1 (9th Cir. 1997) (internal quotation marks and citation omitted).

### B. Leave to Amend

If the Court determines that the complaint should be dismissed, it must then decide whether to grant leave to amend. Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend should "be freely granted when justice so requires," bearing in mind "the underlying purpose of Rule 15 . . . [is] to facilitate decision on the merits, rather than on the pleadings or technicalities." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (internal quotation marks and citation omitted). Nonetheless, a court "may exercise its discretion to deny leave to amend due to 'undue delay, bad faith or dilatory motive on part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party. . . [and] futility of amendment.'" *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 892–93 (9th Cir. 2010) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)) (alterations in original).

## III. DISCUSSION

Plaintiffs contend that Clarendon's "reservation of rights" created a conflict of interest for Clarendon's hired defense counsel, Green & Hall, such that Plaintiffs should be entitled to paid independent counsel pursuant to California Civil Code § 2860. By refusing to pay for independent

counsel or to allow independent counsel to assist in the defense of the Underlying Action, Plaintiffs allege that Clarendon has breached its duty to defend.

In its Motion to Dismiss, Clarendon denies that any conflict of interest exists on account of its "reservation of rights" to seek reimbursement, and therefore refuses to pay for Plaintiffs' independent counsel. Mot. at 1. Clarendon further argues that Plaintiffs' action is a "shotgun attempt at wresting away from the insurer its right to control the defense while the underlying action is ongoing . . . merely because some damages may be covered and some others may not be." Mot. at 18.

While Plaintiffs' FAC makes several conclusory allegations, the Court finds that Plaintiffs' FAC fails to state sufficient facts to support a reasonable inference that Clarendon is liable for the misconduct alleged. *See Iqbal*, 556 U.S. at 678; *Vaughn*, 649 F.3d at 1064. Therefore, Clarendon's Motion to Dismiss is GRANTED. However, because Plaintiffs may allege facts to cure the deficiencies in the FAC, the dismissal is granted with leave to amend. The Court will address its ruling with respect to each cause of action below.

**A. First Cause of Action: Declaratory Relief**

Plaintiffs first seek a declaration of rights. As noted by the California Court of Appeal in *Gafcon, Inc. v. Ponsor & Associates*, 98 Cal. App. 4th 1388 (2002), a "controversy that is the subject of declaratory relief must be of a character which admits of specific and conclusive relief by judgment within the field of judicial determination, as distinguished from an advisory opinion upon a particular or hypothetical set of facts. The judgment must decree, not suggest, what the parties may or may not do." *Id*. at 1403 (internal quotation marks and citations omitted). In addition, declaratory relief "operates prospectively, and not merely for the redress of past wrongs. It serves to set controversies at rest before they lead to repudiation of obligations, invasion of rights or commission of wrongs." *Id*. (internal quotation marks and citations omitted). Basically, "the remedy is to be used in the interests of preventive justice, to declare rights rather than execute them." *Id*.

In support of declaratory relief, Plaintiffs allege that Clarendon "agreed to investigate, adjust, defend and/or indemnify Plaintiffs as to any claims against Plaintiffs in the Underlying Action on account of alleged liability caused by an occurrence falling within and/or potentially falling within the coverage defined in the Policy." FAC ¶ 35. In response to the Underlying Action, however, Clarendon issued a reservation of rights letter. FAC ¶ 36. Thereafter, Clarendon allegedly: (1) "determin[ed] that certain claims were uncovered;" (2) "refus[ed] to indemnify Plaintiffs for the settlement of those claims;" and (3) "reserve[d] the right to seek reimbursement for any defense fees and costs associated with the purportedly uncovered claims." *Id.* At the same time, Clarendon "refuse[d] to allow appointed defense counsel to conduct an investigation that would determine the nature, extent and magnitude of property damage affecting the insured's liability and damage." *Id.* As a result of these actions, Plaintiffs allege that a dispute has arisen between Plaintiffs and Clarendon as to whether:

> (a) damages alleged in the Underlying Action are covered under the policy; (b) Plaintiffs should be required to contribute any sums toward settlement in the Underlying Action, and whether Clarendon would be entitled to reimbursement should it settle unilaterally; (c) destructive testing should be allowed and the scope of such testing; (d) Plaintiffs' efforts to obtain destructive testing violates the Policy's cooperation clause; (e) Clarendon's [reservation of rights pursuant to] *Blue Ridge* [*Insurance Co. v. Brigitte Jacobsen et al.*, 25 Cal. 4th 489 (2001)] . . . places Green & Hall in a conflict of interest; and (f) Clarendon is required to provide independent counsel under Civil Code § 2860.

FAC ¶ 37. Ultimately, Plaintiffs seek a declaratory judgment that: (1) "Clarendon is required to fully indemnify Plaintiffs in the Underlying Action," and (b) Clarendon's reservation of rights "has placed Green & Hall in a conflict of interest under Civil Code § 2860, which compels the appointment of independent counsel of Plaintiffs' choice." FAC at 13–14.

1. Full Indemnification

Plaintiffs first seek a declaratory judgment that Clarendon is required to fully indemnify Plaintiffs in the Underlying Action. Part of this judgment requires resolution of the first two areas of dispute identified by Plaintiffs: (a) whether "damages alleged in the Underlying Action are covered under the policy;" and (b) whether "Plaintiffs should be required to contribute any sums

United States District Court

toward settlement in the Underlying Action, and whether Clarendon would be entitled to reimbursement should it settle unilaterally." FAC ¶ 37.

Clarendon does not dispute that some of the damages alleged in the Underlying Action are covered under the Policy. *See* Mot at 16–17 (noting that Paragraphs 19 and 21 of Plaintiffs' FAC makes clear that Clarendon believes that some of the damages alleged in the Underlying Action are covered under the Policy"). As a result, Clarendon recognizes that it has a duty to defend Plaintiffs in the Underlying Action. *Id.* at 16; *see Montrose Chemical Corp.*, 6 Cal. 4th at 295 ("'[A] liability insurer owes a broad duty to defend its insured against claims that create a potential for indemnity.'") (quoting *Horace Mann Ins. Co.*, 4 Cal. 4th at 1081).

However, Clarendon does dispute that it is seeking to have Plaintiffs contribute any sums toward settlement in the Underlying Action. *See* Reply at 12 ("Park Townsend is not required to contribute any sums toward settlement in the Underlying Action because Clarendon would settle with its own funds"). Rather, Clarendon intends to "bring a separate action for reimbursement" of non-covered damages should it settle the Underlying Action, an approach it maintains is permitted by California law. *See* Mot. at 17–18; Reply at 12.

In California, an insurer's "duty to defend is broader than the duty to indemnify," such that an insurer "must defend a suit which *potentially* seeks damages within the coverage of the policy." *Montrose Chemical Corp.*, 6 Cal.4th at 295 (internal quotation marks and citations omitted). This duty to defend "is a continuing one, arising on tender of defense and lasting until the underlying lawsuit is concluded or until it has been shown that there is *no* potential for coverage." *Id*. (internal citation omitted) (emphasis in original).

However, an insurer may, under certain circumstances, seek reimbursement for defense costs for claims "that are not even potentially covered" by the insurance contract. *Buss v. Superior* Court, 16 Cal. 4th 35, 52–53 (1997) (justifying reimbursement on this basis because the insured has not paid premiums to the insurer for uncovered claims). In addition, in order to seek reimbursement for non-covered claims in a reasonable settlement, an insurer must make: (1) "a timely and express reservation of rights;" (2) "an express notification to the insureds of the

United States District Court

insurer's intent to accept a proposed settlement offer"; and (3) "an express offer to the insureds that they may assume their own defense when the insurer and insureds disagree whether to accept the proposed settlement." *Blue Ridge Ins. Co.*, 25 Cal. 4th at 502 (hereinafter referred to as a "*Blue Ridge* reservation").

The rationale behind permitting an insurer's reimbursement is to prevent unjust enrichment on the part of the insured. As noted by the California Supreme Court in *Buss*, "[n]ot only is it good law that the insurer may seek reimbursement for defense costs as to the claims that are not even potentially covered, but it also makes good sense. Without a right of reimbursement, an insurer might be tempted to refuse to defend an action in any part—especially an action with many claims that are not even potentially covered and only a few that are—lest the insurer give, and the insured get, more than they agreed." *Buss*, 16 Cal. 4th at 52. With a right to reimbursement, however, the "the insurer would not be so tempted, knowing that, if defense of the claims that are not even potentially covered should necessitate any additional costs, it would be able to seek reimbursement." *Id.*; *see also Blue Ridge Ins. Co.*, 25 Cal. 4th at 502 (noting that, "[i]f an insurer could not unilaterally reserve its right to later assert noncoverage of any settled claim, it would have no practical avenue of recourse other than to settle and forgo reimbursement. An insured's mere objection to a reservation of right would create coverage contrary to the parties' agreement in the insurance policy and violate basic notions of fairness.").

Based on Plaintiffs' FAC, Clarendon's reservation of rights appears to comply with California law. *See Blue Ridge Ins. Co.*, 25 Cal. 4th at 502. According to Plaintiffs' FAC, Clarendon made a timely and express reservation of rights upon agreeing to defend Plaintiffs in the Underlying Action, informed Plaintiffs of its interest in settlement, and offered Plaintiffs the opportunity to assume their own defense should the parties disagree about whether Clarendon should accept a proposed settlement. *See* FAC ¶ 21. Clarendon's reservation of rights does not appear to be forcing Plaintiffs to contribute toward the costs of settlement; the allegations in the FAC even make clear that Plaintiffs are free to reject any settlement agreed upon in the Underlying Action. *See id.* Moreover, Plaintiffs concede that "Clarendon is within its right to assert a *Blue*

United States District Court

*Ridge* reservation." Opp'n at 9. Therefore, nothing in the FAC supports a conclusion that Clarendon's reservation of rights and interest in seeking future reimbursement for non-covered costs amounts to misconduct.

In addition, Plaintiffs' cause of action for declaratory relief does not specifically allege that Clarendon has held Plaintiffs liable for any damages or repair costs improperly. Instead, Plaintiffs merely contend that they "take exception with Clarendon's refusal to explain why certain defects are not covered." Opp'n at 9; *see* FAC ¶ 36. Plaintiffs also allege that Clarendon has "refuse[d] to allow appointed defense counsel to conduct an investigation that would determine the nature, extent, and magnitude of property damage affecting the insured's liability and damage," FAC ¶ 36, and that the issue of damages coverage "cannot be adjudicated without evidence," Opp'n at 7. Such contentions hardly support a "reasonable inference" that Clarendon is required to indemnify Plaintiffs fully in the underlying action. *Cf. Iqbal*, 556 U.S. at 678.

Therefore, viewing the facts in the light most favorable to Plaintiffs, the FAC does not support a finding that Clarendon has invoked its reservation of rights improperly or that it must indemnify Plaintiffs fully in the Underlying Action. Accordingly, Defendants' Motion to Dismiss Plaintiffs' request for declaratory relief on this ground is GRANTED with leave to amend.

2. Conflict of Interest Requiring Independent Counsel

Plaintiffs further claim that Clarendon's *Blue Ridge* reservation of rights has placed Green & Hall in a conflict of interest under California Civil Code § 2860, which Plaintiffs contend "compels the appointment of independent counsel of Plaintiffs' choice." FAC at 13–14. As part of this conflict of interest, Plaintiffs allege that a dispute has arisen regarding whether "destructive testing should be allowed and the scope of such testing," in addition to whether "Plaintiffs' efforts to obtain destructive testing violates the Policy's cooperation clause." FAC ¶ 37.

Clarendon disputes that its reservation of rights created a conflict of interest sufficient to entitle Plaintiffs to paid independent counsel. Clarendon argues first that "[i]nsurer-retained defense counsel has no ability to control whether the damages the underlying Plaintiffs seek are covered or not, let along [*sic*] what they are." Mot. at 18. Clarendon further contends that its

"obvious incentive is to minimize Plaintiff's claimed damages, regardless of whether the damages are covered or not." *Id.* Therefore, Clarendon argues that it "has the exclusive right to control Park Townsend's defense, including the extent of destructive testing recommended by Green & Hall, according to defense counsel's best tactical judgment." *Id.*

California courts first recognized the right to independent counsel at an insurer's expense, if a conflict of interest exists between an insurer and its insured based on possible noncoverage under an insurance policy, in *San Diego Federal Credit Union v. Cumis Ins. Society Inc.*, 162 Cal. App. 3d 358 (1984). "The *Cumis* opinion was codified in 1987 by the enactment of Civil Code section 2860, which 'clarifies and limits' the rights and responsibilities of insurer and insured as set forth in *Cumis*." *James 3 Corporation v. Truck Ins. Exchange*, 91 Cal. App. 4th 1093, 1100 (2001). Accordingly, California Civil Code § 2860 provides that, "[i]f the provisions of a policy of insurance impose a duty to defend upon an insurer and a conflict of interest arises which creates a duty on the part of the insurer to provide independent counsel to the insured, the insurer shall provide independent counsel to represent the insured . . . ." Cal. Civ. Code § 2860.

California courts have cautioned, however, that "*Cumis* can be read to suggest that a conflict arises *whenever* the insurer asserts a reservation of its right to assert noncoverage, while still providing a defense to the liability action." *Gafcon, Inc.*, 98 Cal. App. 4th at 1421–22 (internal quotation marks and citation omitted). As noted by the California Court of Appeal in *Gafcon, Inc.*, "[t]his interpretation of *Cumis* would be erroneous . . . It is only when the basis for the reservation of rights is such as to cause assertion of factual or legal theories which undermine or are contrary to the positions to be asserted in the liability case that a conflict of interest sufficient to require independent counsel, to be chosen by the insured, will arise." *Id.*; *see also* Cal Civ. Code § 2860 (limiting the situations in which a conflict of interest exists and stating that "when an insurer reserves its rights on a given issue and the outcome of that coverage issue can be controlled by counsel first retained by the insurer for the defense of the claim, a conflict of interest *may* exist.") (emphasis added). Even still, for independent counsel to be required, the conflict of interest must

be "*significant*, not merely theoretical, *actual*, not merely potential." *Dynamic Concepts v. Truck Ins. Exch.*, 61 Cal App. 4th 999, 1007 (1998) (emphasis added).

In this case, Plaintiffs allege that paragraphs 17–29 of the FAC allege facts "showing a conflict of interest between Plaintiffs and defense counsel, such that counsel can, consciously or unconsciously, directly affect the outcome of the Underlying Action." Opp'n at 11. Therefore, according to Plaintiffs, the facts alleged in the FAC sufficiently demonstrate that a conflict of interest exists sufficient to trigger the right to independent counsel. *Id.* The Court disagrees.

First, Plaintiffs contend that a conflict of interest exists because "Clarendon maintains that 49.51% of the cost of repair is not covered by the Policy." Mot. at 11; *see* FAC ¶¶ 19, 21. However, pursuant to Section 2860, "a conflict of interest does *not* exist as to allegations or facts in the litigation for which the insurer denies coverage." Cal. Civ. Code § 2860 (emphasis added). Therefore, the fact that the Underlying Action involves some claims for damages that Clarendon maintains are not covered by the Policy does not, in and of itself, suffice to constitute a conflict of interest.

Second, Plaintiffs allege that Clarendon's appointed defense counsel, Green & Hall, "is in a position to control the defense in a manner that can directly impact coverage." FAC ¶ 27. In support of this claim, Plaintiffs contend that Green & Hall are "directing the scope of destructive testing, and refusing to comply with the scope of testing requested by Plaintiffs." Mot. at 11; *see* FAC at ¶¶ 23–25. As a result, Plaintiffs assert that they are being denied "the means of refuting both PTHA's claims of liability and damages, as well as Clarendon's position about the lack of covered property damages." FAC ¶ 23.

The facts alleged in Plaintiffs' FAC do not, however, support a reasonable inference that Green & Hall's approach to destructive testing unilaterally benefits Clarendon, and therefore creates a conflict of interest. As Green & Hall are undertaking Plaintiffs' defense in the underlying action, there is no reason to infer from the facts that Green & Hall's litigation strategy is actually intended to deprive Plaintiffs of the means to refute claims of liability and damages. *Cf. Gulf Ins.*

*Co. v. Berger, Kahn, Shafton, Moss, Figler, Simon, & Gladstone*, 79 Cal. App. 4th 114, 131 (2000) (noting that "an actual conflict of interest precludes insurer-appointed defense counsel from presenting a quality defense for the insured" and that a disqualifying conflict exists if the insurance counsel has "incentive to attach liability to the insured."). Moreover, it is unclear from the FAC how defense counsel's decision to carry out or limit the scope of destructive testing in any way affects whether the damages sought by Plaintiffs in the Underlying Action are covered by the Policy. Nothing in the FAC supports an inference that Green & Hall's representation of Plaintiffs has actually been "rendered less effective by reason of [also] represent[ing]" Clarendon. *See Golden Eagle Insurance Co. v. Foremost Insurance Co.*, 20 Cal. App. 4th 1372, 1396 (1993).

Similarly, although Plaintiffs' FAC alleges that Clarendon "has an incentive to structure the settlement such that funds are allocated toward non-covered repairs," FAC ¶ 22, Plaintiffs do not provide any facts to support this proposition. This "conclusory allegation" is "insufficient to defeat a motion to dismiss." *Johnson*, 355 F.3d at 1183. Likewise, other than alleging that there is a dispute about whether "Plaintiffs' efforts to obtain destructive testing violates the Policy's cooperation clause," FAC ¶ 37, the FAC does not set forth any facts to support finding that this alleged dispute hinders Green & Hall from providing a quality defense for Plaintiffs in the Underlying Action or otherwise rises to the level of creating a conflict requiring independent counsel.

Finally, Plaintiffs' FAC alleges that "Clarendon is . . . refusing to allow Green & Hall to pursue implicated subcontractors in a cross-complaint." FAC ¶ 36. Exhibit B of Clarendon's Motion to Dismiss demonstrates that, on July 31, 2012, Clarendon filed a cross-complaint against subcontractors on Plaintiffs' behalf. Fed. R. Evid. 201; *see* ECF No. 9-1. As the filing of the cross-complaint "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned," the Court takes judicial notice of this exhibit pursuant to Rule 201 of the Federal Rules of Evidence. *See Shaw*, 56 F.3d at1129 n.1 (stating that a "court may look beyond the plaintiff's complaint to matters of public record" without converting the Rule 12(b)(6) motion into one for summary judgment."); *see also Schwarz*, 234 F.3d at 435 ("The court need not

accept as true . . . allegations that contradict facts that may be judicially noticed by the court."). Based on the minimal allegations in the FAC and the judicially noticeable cross-complaint filed by Clarendon, it is unclear how this allegation supports finding that there is a conflict of interest requiring independent counsel.[4]

To the extent that Green & Hall have an incentive to attach liability to Plaintiffs or are litigating the Underlying Action in a manner that actually benefits Clarendon to Plaintiffs' detriment, such allegations are not clear from the FAC. Without more, Plaintiffs' FAC simply appears to be an attempt to interfere with Green & Hall's defense of the Underlying Action based on a disagreement about legal tactics. This does not suffice to create a conflict of interest justifying the right to independent counsel paid for at the insurer's expense. *See James 3 Corporation*, 91 Cal. App. 4th at 1103 n.3 ("An insurer has the right to control the defense it provides its insured so long as there is not a conflict of interest. This right to control the defense necessarily encompasses the right to determine what measures are cost effective, bearing in mind liability and indemnity exposure.") (citing *Safeco Ins. Co. v. Superior Court*, 71 Cal. App. 4th 782, 789 (1999), *Assurance Co. of America v. Haven*, 32 Cal. App. 4th 78, 87 (1995), *Spindle v. Chubb/Pacific Indemnity Group*, 89 Cal. App. 3d 706, 714 (1979)).

In sum, Plaintiffs FAC fails to set forth facts sufficient to demonstrate why there is a conflict of interest between Clarendon's defense counsel and Plaintiffs. At most, Plaintiffs' FAC sets forth facts indicating that a potential conflict of interest may arise in the future related to coverage disputes. However, "[a] mere possibility of an unspecified conflict does not require independent counsel. The conflict must be significant, not merely theoretical, actual, not merely potential." *Dynamic Concepts, Inc.*, 61 Cal App. 4th at 1007; *see also Blanchard v. State Farm Fire & Casualty Co.*, 2 Cal. App. 4th 345, 350 (1991) (holding that insurer was not required to pay damages to insured for failing to provide independent counsel in an underlying lawsuit, following a

[4] Although the Court does not consider Clarendon's Counterclaim for Declaratory Relief for the purpose of evaluating this Motion to Dismiss, the Court recognizes that there may be more to this factual dispute than reflected in Plaintiffs' FAC. *See* ECF No. 15. Therefore, if Plaintiffs seek to file a Second Amended Complaint in accordance with this Order, Plaintiffs should support this claim with "further factual enhancement." *See Iqbal*, 556 U.S. at 678.

United States District Court

reservation of rights for non-covered damages, because the insured "produced no evidence to show in what specific way the defense attorney could have controlled the outcome of the damage issue to appellant's detriment, or had incentive to do so . . . [The insured] merely urged that there was an unspecified *possibility* of a conflict.") (emphasis in original).

As none of Plaintiffs' allegations rise to the level of creating an actual, significant conflict of interest, the Court GRANTS Defendants' Motion to Dismiss Plaintiffs' action for declaratory relief. However, since Plaintiffs may be able to allege facts to cure these deficiencies, the dismissal is granted with leave to amend.

**B. Second Cause of Action: Breach of Contract**

Plaintiffs also allege that, "Clarendon has breached the Policy by failing to appoint Independent Counsel, which is necessitated by the *Blue Ridge* Reservation." FAC ¶ 44. "As a direct and proximate result of the breach by Clarendon," Plaintiffs allege that they have "incurred substantial attorneys' fees and costs, experts' fees and costs, court costs and other expenses in defense of the Underlying Action." FAC ¶ 47.

For the reasons stated above, Plaintiffs' FAC fails to set forth facts sufficient to support a reasonable inference that Clarendon's reservation of rights has created an actual, significant conflict of interest requiring the appointment of paid, independent counsel pursuant to California Civil Code § 2860. *See Dynamic Concepts, Inc.*, 61 Cal App. 4th at 1007; *Blanchard*, 2 Cal. App. 4th at 350.[5] Accordingly, the Court GRANTS Defendants' Motion to Dismiss Plaintiffs' Second

[5] Although Plaintiffs seek to distinguish the facts of this case from *Blanchard*, *Dynamic Concepts, Inc.*, and "other cases involving reservations," arguing that this case is unique because it involves a *Blue Ridge* reservation against its insured, *see* Opp'n at 16, Plaintiffs' arguments do not overcome the deficiencies in the FAC so as to defeat Clarendon's Motion to Dismiss. As in this case, *Blanchard* involves an insured who sued its insurer for breach of contract and breach of the covenant of good faith and fair dealing for failing to provide independent counsel in the defense of a homeowners association lawsuit alleging defective construction. *See* 2 Cal. App. 4th at 347. The insurer defended the general contractor in the homeowners association lawsuit "subject to a reservation of rights that certain types of damages were not covered by the insurance policy." *Id*. The general contractor brought suit, alleging that the insurer's "reservation of rights created a conflict of interest which required respondent to pay for an additional independent counsel for appellant. (*Cumis* counsel)." *Id*. The California Court of Appeal, Second District, concluded that the general contractor was not entitled to damages for breach of contract and bad faith because "there was no evidence of a conflict of interest of the type requiring appointment of independent

Cause of Action for Breach of Contract. However, because Plaintiffs may allege facts to cure this deficiency, this dismissal is granted without prejudice.

**C. Third Cause of Action: Breach of Implied Covenant of Good Faith and Fair Dealing**

Finally, Plaintiffs FAC alleges that "Clarendon has breached the implied covenant of good faith and fair dealing when refusing to *fully* defend the Underlying Action." FAC ¶ 50. "California law implies a covenant of good faith and fair dealing in every insurance contract." *Anguiano v. Allstate Ins. Co.*, 209 F.3d 1167, 1169 (9th Cir. 2000) (per curiam) (citing *PPG Indus., Inc. v. Transamerica Ins. Co.*, 20 Cal.4th 310, 312 (1999)). "This duty extends to an insurance company's insureds," *Anguiano*, 209 F.3d at 1169, and "requires each contracting party to refrain from doing anything to injure the right of the other to receive the benefits of the agreement," *Egan v. Mutual of Omaha Ins. Co.*, 24 Cal.3d 809, 818–19 (1979). Furthermore, this implied promise "requires that an insurer take into account the interest of the insured and give it at least as much consideration as it does to its own interest when evaluating settlement offers." *Anguiano*, 209 F.3d at 1169 (internal quotation marks and citations omitted).

---

counsel." *Id*. at 349. Similarly, in *Dynamic Concepts, Inc.*, an insured sued its insurer for bad faith after the insurer refused the insured's demand to "immediately provide independent counsel pursuant to Civil Code Section 2860 when the insurer agreed to defend under a reservation of rights in an action involving covered and uncovered claims." 61 Cal. App. 4th at 883–84. The Court found that "no breach of the insurer's duty of defense ha[d] been established" and "decline[d] to adopt a rule that would encourage insureds to cultivate conflicts with carriers rather than resolve them." *Id*. at 884.

The fact that the insurers in *Blanchard* and *Dynamic Concepts, Inc.* did not specifically invoke their rights subject to *Blue Ridge*, a case decided ten years after *Blanchard* and three years after *Dynamic Concepts, Inc.*, is not a significant enough distinction so as to cure the deficiencies in Plaintiffs' FAC. While neither case involves a question of destructive testing as is alleged here, the basic analysis regarding a conflict of interest stems from the same statute, California Civil Code § 2860, and the same issues regarding canons of legal ethics. *See, e.g.*, *Blanchard*, 2 Cal. App. 4th at 350 (noting that the "*Cumis* opinion [upon which Section 2860 was predicated] was based heavily on the canons of ethics and the possibility of conflicting choices confronting an attorney"). Since Plaintiffs' FAC does not set forth facts that would "show in what specific way the defense attorney could have controlled the outcome of the damage issue to appellant's detriment, or had an incentive to do so," *Blanchard*, 2 Cal. App. 4th at 350, Plaintiffs' arguments do not overcome the deficiencies in the FAC so as to defeat Clarendon's Motion to Dismiss.

The implied covenant is "a *supplement* to the express contractual covenants, to prevent a contracting party from engaging in conduct which (while not technically transgressing the express covenants) frustrates the other party's rights to the benefits of the contract." *Love v. Fire Ins. Exchange*, 221 Cal. App. 3d 1136, 1153 (1990) (emphasis in original). However, "[a]bsent . . . [a] primary right [that has been breached] . . . the *auxiliary* implied covenant has nothing upon which to act as a supplement, and should not be endowed with an existence independent of its contractual underpinnings." *Id*.; *see also Dynamic Concepts, Inc.*, 61 Cal. App. 4th at 889-890 ("[an insurance] carrier is subject to tort liability for bad faith only where it unreasonably fails to provide benefits due under the policy or the law.").

Here, Plaintiffs allege that, "[p]ursuant to the Policy, Clarendon had an implicit obligation to act fairly and in good faith to Plaintiffs to promptly and reasonably pay all attorney's fees and costs incurred by Plaintiffs in the defense of the Underlying Action, and to make reasonable coverage decisions." FAC ¶ 50. According to Plaintiffs, "Clarendon has breached the implied covenant of good faith and fair dealing when refusing to *fully* defend the underlying action." *Id*. Plaintiffs further contend that Clarendon's "acts and omissions were unreasonable, malicious, fraudulent, oppressive, and despicable. Clarendon's officers, directors, and/or managing agents and/or employees participated in, authorized and/or ratified the wrongful conduct alleged herein." FAC ¶ 51.

Ultimately, Plaintiffs' bad faith claim hinges on its asserted right to paid independent counsel due to a conflict of interest. However, because Plaintiffs' FAC fails to set forth sufficient facts to support a reasonable inference that a conflict of interest exists, thereby requiring the appointment of independent counsel, Plaintiffs' FAC does not support a finding that Clarendon has failed to fully defend Plaintiffs in the Underlying Action. Accordingly, the Court GRANTS Defendants' Motion to Dismiss Plaintiffs claim for breach of the implied covenant of good faith and fair dealing with leave to amend.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS Defendants' Motion to Dismiss with leave to amend. Should Plaintiffs elect to file a Second Amended Complaint curing the deficiencies discussed herein, Plaintiffs shall do so within 21 days of the date of this Order. Failure to meet the 21-day deadline to file an amended complaint or failure to cure the deficiencies identified in this Order will result in a dismissal with prejudice. Plaintiff may not add new causes of action or parties without leave of the Court or stipulation of the parties pursuant to Federal Rule of Civil Procedure 15.

**IT IS SO ORDERED.**

Dated: January 2, 2013

Lucy H. Koh

LUCY H. KOH
United States District Judge

United States District Court