**United States District Court**
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | | |
|---|---|---|
| PARK TOWNSEND, LLC; GKB DEVELOPMENT CO., LLC; | ) ) ) | Case No.: 12-CV-04412-LHK |
| Plaintiffs, | ) ) | ORDER GRANTING-IN-PART MOTION TO DISMISS; GRANTING |
| v. | ) ) | MOTION TO AMEND |
| CLARENDON AMERICA INSURANCE COMPANY and DOES 1–500, inclusive, | ) ) ) | COUNTERCLAIM |
| Defendants. | ) ) | |
| CLARENDON AMERICA INSURANCE COMPANY and DOES 1–500, inclusive, | ) ) ) | |
| Counterclaimants, | ) ) | |
| v. | ) | |
| PARK TOWNSEND, LLC; GKB DEVELOPMENT CO., LLC; | ) ) ) | |
| Counterdefendants. | ) ) ) | |

Plaintiffs and Counterdefendants Park Townsend, LLC ("Park Townsend") and GKB

Development Co., LLC (collectively, "Plaintiffs") bring this insurance coverage action against

Defendants and Counterclaimants Clarendon America Insurance Company ("Clarendon") and

1

Does 1 through 500 (collectively, "Defendants") seeking declaratory relief and alleging breach of contract and breach of the implied covenant of good faith and fair dealing for failure to defend. Presently before the Court is Clarendon's Motion to Dismiss Plaintiffs' Second Amended Complaint as well as Clarendon's Motion to Amend Counterclaim.

Having considered the parties' submissions and oral arguments, and for good cause shown, the Court hereby STAYS Plaintiffs' first cause of action seeking declaratory relief for full indemnification. The Court GRANTS the remainder of Clarendon's Motion to Dismiss Plaintiffs' Second Amended Complaint with prejudice. In addition, the Court GRANTS Clarendon's Motion to Amend Counterclaim.

## I.       BACKGROUND

### A.       Procedural Background

Plaintiffs filed this action against Defendants in the Santa Clara Superior Court on July 13, 2012, *see* ECF No. 1-2, and subsequently filed the First Amended Complaint ("FAC") on July 20, 2012, *see* ECF No. 1-3. Clarendon removed the case to this Court on August 22, 2012. *See* ECF No. 1. Shortly thereafter, Clarendon filed a Motion to Dismiss Plaintiffs' First Amended Complaint based on Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See* ECF No. 9. On November 14, 2012, Clarendon also filed a Counterclaim for Declaratory Relief ("Counterclaim"), *see* ECF No. 15, to which Plaintiffs filed an Answer, *see* ECF No. 16.

On January 2, 2013, the Court granted Defendants' Motion to Dismiss the FAC but afforded Plaintiffs leave to amend. *See* Jan. 2 Order, ECF No. 19. The Order explained in detail the deficiencies within the FAC. *Id.* In addition, the Order expressly advised Plaintiffs that "[f]ailure to cure the deficiencies identified in this Order will result in a dismissal with prejudice." *Id.* at 18.

Plaintiffs filed the operative Second Amended Complaint ("SAC") on January 23, 2013. *See* ECF No. 24. On February 4, 2013, Clarendon filed a Motion to Amend Counterclaim based on Rule 15(a)(2) of the Federal Rules of Civil Procedure. *See* Mot. to Amend Countercl. ("Mot. to Amend"), ECF No. 27. Clarendon then filed a Motion to Dismiss Plaintiffs' SAC based on Rule 12(b)(6) of the Federal Rules of Civil Procedure, *see* Mot. to Dismiss Pls.' SAC ("Mot." or "Mot.

**United States District Court**
For the Northern District of California

2

1  to Dismiss"), ECF No. 30, as well as a Request for Judicial Notice in Support of the Motion to

2  Dismiss, *see* Req. Jud. Notice ("RJN"), ECF No. 30-2.  Plaintiffs filed oppositions to both motions.

3  *See* Pls.' Opp'n to Defs.' Mot. to Amend Countercl. ("Opp'n to Amend."), ECF No. 31; Pls.'

4  Opp'n to Defs.' Mot. to Dismiss SAC ("Opp'n"), ECF No. 33.  In support of Plaintiffs' Opposition

5  to the Motion to Dismiss, Plaintiffs also filed a Request for Judicial Notice.  *See* Req. Jud. Notice

6  Opp'n Mot. to Dismiss ("RJN Opp'n Mot."), ECF No. 33-2.  Clarendon then filed replies in

7  support of both the Motion to Amend and the Motion to Dismiss.  *See* Def.'s Reply Supp. Mot. to

8  Amend Countercl. ("Reply to Amend."), ECF No. 32; *see also* Defs.' Reply Supp. Mot. to Dismiss

9  Pls.' SAC ("Reply"), ECF No. 34.  On June 27, 2013, the Court held a hearing on these motions.

10        **B.        Factual Allegations**

11        As described in the January 2 Order, this action arises from Clarendon's alleged breach of

12  the duty to defend Plaintiffs in an ongoing construction defect lawsuit.  *See* Jan. 2 Order at 2.

13  Plaintiff Park Townsend was the developer of a 98-unit condominium construction project in San

14  Jose, California, commonly known as the Park Townsend Development.  SAC ¶ 10.

15        In 2001, Park Townsend entered into an insurance contract with Clarendon that included a

16  $5,000,000 general aggregate policy limit.  SAC ¶ 9; *see* Clarendon Policy No. WT0991170 (the

17  "Policy" or "Clarendon Policy"), ECF No. 24-1, Ex. A.[1]  Although the Policy states that Clarendon

18  "will pay those sums that the insured becomes legally obligated to pay as damages because of

19  'bodily injury' or 'property damage' to which this insurance applies," *see* Clarendon Policy at 61,

20  the Policy also includes certain exclusions, such as "business risk" exclusions, which eliminate

21  coverage for the insureds' own defective work product, *see, e.g.*, *id.* at 63-64.

22        On January 31, 2006, the Park Townsend Homeowners Association ("PTHA") issued a

23  Notice of Defects pursuant to California Civil Code § 910 against Plaintiff Park Townsend.  SAC

24  ¶ 11.  The notice alleged a claim for construction defects in the design and/or construction of the

25  Park Townsend Development in San Jose, California.  *Id.*  The PTHA then issued a second Notice

26  of Defects on February 13, 2008, alleging further claims for construction defects at the Park

27

28  _____

[1]  All plaintiffs in this action "were either identified as the named insured or identified as additional insureds under the Policy."  SAC ¶ 9.

1    Townsend Development.  SAC ¶ 12.  On August 1, 2008, the PTHA filed suit against Plaintiffs in

2    Santa Clara Superior Court alleging numerous violations of building standards and construction

3    defects involving the construction of the condominiums and the common areas.  *See* SAC ¶ 13; *see*

4    *Park Townsend Homeowners Ass'n v. Park Townsend, LLC, et al.*, No. 108CV118962 (Santa Clara

5    Super. Ct. filed Aug. 1, 2008) (the "Underlying Action").[2]

6         Clarendon agreed to defend Plaintiffs in the Underlying Action subject to a full reservation

7    of rights, and appointed the law firm of Green & Hall to defend the Underlying Action.[3]  SAC ¶ 14.

8    Plaintiffs retained attorney Alyssa Klausner as personal counsel.  *See* SAC ¶¶ 29, 30.

9         On November 9, 2011, Plaintiffs wrote to Clarendon with a demand for the appointment of

10   independent counsel under California Civil Code Section 2860.  SAC ¶ 18.  Clarendon denied this

11   request.  SAC ¶ 19.

12        On or around November 23, 2011, Clarendon provided Plaintiffs with a supplemental

13   "reservation of rights" letter in which Clarendon indicated that, based on its analysis of the parties'

14   costs-of-repairs in the Underlying Action, there were some repair costs that may not be covered by

15   the Clarendon policy.  SAC ¶ 20.  By letter on March 19, 2012, Clarendon further informed

16   Plaintiffs that approximately 49.51% of the costs of repair would not be covered under the Policy.

17   SAC ¶ 22.  In addition, in this letter, Clarendon specifically reserved its right to recover any

18   indemnity pursuant to *Blue Ridge Ins. Co. v. Brigitte Jacobsen et al.*, 25 Cal. 4th 489 (2001) ("*Blue*

19   *Ridge* Reservation"), though informed Plaintiffs that they had the option of rejecting a settlement

20   offer and assuming their own defense at their own expense.  SAC ¶ 22.[4]

21   _____

22   [2]  The Complaint alleges, in part, the following causes of action: (1) Civil Code Title Seven-
     Violation of Building Standards for Original Construction; (2) Breach of the Implied Warranty; (3)
23   Strict Liability; (4) Negligence; (5) Breach of Contract; (6) Breach of the Implied Covenant of
     Good Faith and Fair Dealing; (7) Breach of Express Warranty; and (8) Negligent
24   Misrepresentation.
     [3]  Clarendon is not a party in the Underlying Action.  Clarendon's duty to defend Plaintiffs arises
25   from the Policy.  *Montrose Chem. Corp. v. Superior Court*, 6 Cal. 4th 287, 295 (1993) ("'[A]
     liability insurer owes a broad duty to defend its insured against claims that create a potential for
26   indemnity.'") (quoting *Horace Mann Ins. Co. v. Barbara B.*, 4 Cal. 4th 1076, 1081 (1993)).
     [4]  Plaintiffs also allege that Clarendon reserved its rights on negligent misrepresentation and for
27   reimbursement of defense fees and costs pursuant to *Buss v. Superior Court*, 16 Cal. 4th 35 (1997)
     ("*Buss* Reservation").  SAC ¶ 14.
28

4

1  Plaintiffs responded to Clarendon's supplemental reservation of rights letter by again

2  alleging that Clarendon created a conflict of interest between the insurer and insureds.  SAC ¶ 23.

3  In addition, because Clarendon's reservation of rights "sought reimbursement of both defense fees

4  and costs and settlement funds paid in the Underlying Action for defects [for] which there was no

5  resultant property damage," Plaintiffs believed that they had the right to mitigate their liability

6  exposure by pursuing subcontractors involved in the construction for indemnity and contribution.

7  SAC ¶ 17.  Accordingly, during June and July of 2012, Plaintiffs demanded that Green & Hall file

8  a cross-complaint against implicated subcontractors for indemnity.  SAC ¶ 29.

9  On July 31, 2012, Green & Hall filed a cross-complaint in the Underlying Action, but

10  limited the cross-action to indemnification for those damages that would not otherwise be covered

11  by the Clarendon policy.  SAC ¶ 31.  However, Green & Hall believed that, by pursuing the cross-

12  complaint, it would have to argue over which claims were and were not covered, which could

13  create a conflict of interest between Clarendon and Plaintiffs.  *See* SAC ¶ 34; Countercl. ¶ 20.

14  Accordingly, Green & Hall subsequently dismissed this cross-complaint in order to continue as

15  counsel of record.  *Id.*  Ms. Klausner disagreed with this course of action.  SAC ¶ 37.

16  Ms. Klausner then unilaterally filed a Notice of Association in November of 2012 in order

17  to prevent dismissal of the cross-complaint and to widen its scope to include both covered and non-

18  covered claims.  SAC ¶ 38.  Plaintiffs allege that Clarendon instructed Green & Hall not to support

19  Ms. Klausner's motion to associate.  SAC ¶ 40.  Subsequently, Green & Hall filed a Motion to be

20  Relieved as Counsel based on a "[c]onflict of interest arising from joint representation of client

21  insurance carrier and insured client."  SAC ¶ 42 (citing ECF No. 24, Ex. D).

22  Plaintiffs allege that, "[w]hile Green & Hall did not formally or timely oppose the Motion

23  to Associate," Mr. Huguenin, counsel for Green & Hall, did submit a declaration in response to

24  Plaintiffs' Motion to Associate.  SAC ¶ 44.  In the absence of Green & Hall's consent to Ms.

25  Klausner's association in the Underlying Action, the Superior Court denied the Motion to

26  Associate.  SAC ¶ 48.  Green & Hall then withdrew the Motion to be Relieved as Counsel.  SAC

27  ¶ 49.

28

5

1    Plaintiffs now allege that Clarendon's *Blue Ridge* Reservation has created a conflict of

2    interest between Green & Hall and Plaintiffs.  SAC ¶ 50.  Accordingly, Plaintiffs allege that they

3    have been "unduly prejudiced" in their defense of the Underlying Action.  SAC ¶ 55.

4    **II.    LEGAL STANDARDS**

5        **A.    Motion to Dismiss Under Rule 12(b)(6)**

6        Pursuant to Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss an

7    action for failure to allege "enough facts to state a claim to relief that is plausible on its face."  *Bell*

8    *Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the

9    plaintiff pleads factual content that allows the court to draw the reasonable inference that the

10   defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a

11   'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted

12   unlawfully."  *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) (internal citations omitted).   For purposes of

13   ruling on a Rule 12(b)(6) motion, the Court "accept[s] factual allegations in the complaint as true

14   and construe[s] the pleadings in the light most favorable to the non-moving party."  *Manzarek v. St.*

15   *Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

16       However, a court need not accept as true allegations contradicted by judicially noticeable

17   facts, *Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000), and a "court may look beyond

18   the plaintiff's complaint to matters of public record" without converting the Rule 12(b)(6) motion

19   into one for summary judgment, *Shaw v. Hahn*, 56 F.3d 1128, 1129 n.1 (9th Cir. 1995).  Nor is a

20   court required to "'assume the truth of legal conclusions merely because they are cast in the form

21   of factual allegations.'"  *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (per curiam)

22   (quoting *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981)).  Mere "conclusory

23   allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss."

24   *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004); *accord Iqbal*, 556 U.S. at 678.

25   Furthermore, "'a plaintiff may plead [him]self out of court'" if he "plead[s] facts which establish

26   that he cannot prevail on his [constitutional] claim."  *Weisbuch v. Cnty. of L.A.*, 119 F.3d 778, 783

27   n.1 (9th Cir. 1997) (internal quotation marks and citation omitted).

28       **B.    Leave to Amend**

*United States District Court*
*For the Northern District of California*

6

1    Pursuant to Federal Rule of Civil Procedure 15(a), a party may amend its pleading once as a

2  matter of course within 21 days of serving it.  Fed. R. Civ. P. 15(a)(1).  After that initial period has

3  passed, amendment is permitted only with the opposing party's written consent or leave of the

4  court.  Fed. R. Civ. P. 15(a)(2).

5    Under Rule 15(a), leave to amend "shall be freely given when justice so requires," bearing

6  in mind "the underlying purpose of Rule 15 . . . [is] to facilitate decisions on the merits, rather than

7  on the pleadings or technicalities." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc)

8  (internal quotation marks and citation omitted).  Nonetheless, a court "may exercise its discretion

9  to deny leave to amend due to 'undue delay, bad faith or dilatory motive on part of the movant,

10  repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the

11  opposing party. . . , [and] futility of amendment.'" *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d

12  876, 892-93 (9th Cir. 2010) (amended) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962))

13  (alterations in original).  In addition, a court may also consider whether a party has previously had

14  an opportunity for amendment.  *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186 n.3 (9th Cir.

15  1987).  Where a court has already provided a party with one or more opportunities to amend his or

16  her complaint, a court's discretion over further amendments is particularly broad.  *Id.*

17  **III.    MOTION TO DISMISS**

18    **A.    Request for Judicial Notice**

19    In connection with the Motion to Dismiss, Clarendon requests that the Court take judicial

20  notice of the following documents, which were filed in the Underlying Action: (1) the Complaint

21  filed on August 1, 2008 by the Park Townsend Homeowners Association; (2) the Motion to

22  Associate Counsel filed by Park Townsend on November 21, 2012; (3) the Opposition to the

23  Motion to Associate Counsel filed by Clarendon on December 27, 2012; (4) the Reply to the

24  Opposition to the Motion to Associate Counsel filed by Park Townsend LLC, et al, on January 4,

25  2013; (5) the Declaration of Edward Huguenin in Response to the Reply to the Opposition to the

26  Motion to Associate Counsel filed on January 9, 2013; (6) the Order after the hearing on January

27  11, 2013; (7) the Notice of Withdrawal of the Motion to be Relieved as Counsel; and (8) the

28  Request for Dismissal.  *See* RJN, ECF No. 30-2.

1   Likewise, in their Opposition to Clarendon's Motion to Dismiss, Plaintiffs request that the

2   Court take judicial notice of the following documents: (1) Clarendon's Proposed Amended

3   Counterclaim, filed as ECF No. 28; and (2) the transcript from the hearing in the Underlying

4   Action dated January 11, 2013. *See* RJN Opp'n Mot., ECF No. 33-2. Clarendon objects to Exhibit

5   2 of Park Townsend's Request for Judicial Notice because the attached January 11, 2013

6   Reporter's Transcript from the underlying state court construction lawsuit is allegedly not an

7   accurate transcript. However, Clarendon has not objected to the Court taking judicial notice of an

8   accurate transcript, which is attached to Clarendon's Supplemental Declaration of Henry Su. *See*

9   Reply at 4; ECF No. 34-1 (corrected transcript).

10   While a district court generally may not consider any material beyond the pleadings in

11   ruling on a Rule 12(b)(6) motion, a court may take judicial notice of documents referenced in the

12   complaint, as well as matters in the public record, without converting a motion to dismiss into one

13   for summary judgment. *See Lee v. City of L.A.*, 250 F.3d 668, 688-89 (9th Cir. 2001). A matter

14   may be judicially noticed if it is either "generally known within the territorial jurisdiction of the

15   trial court" or "can be accurately and readily determined from sources whose accuracy cannot

16   reasonably be questioned." Fed. R. Evid. 201(b). However, a court may not take judicial notice of

17   a fact in the public record that is "subject to reasonable dispute." *Id.* In particular, "[w]hen a court

18   takes judicial notice of another court's opinion, it may do so 'not for the truth of the facts recited

19   therein, but for the existence of the opinion, which is not subject to reasonable dispute over its

20   authenticity.'" *Lee*, 250 F.3d at 690 (citation omitted).[5]

21   Accordingly, the Court GRANTS Clarendon's Request for Judicial Notice of Exhibits 1

22   through 8 in support of Clarendon's Motion to Dismiss. *See* RJN at 2. The Court takes judicial

23   notice of all of these filings from the Underlying Action as they are part of the public record, and

24   therefore their authenticity is not subject to reasonable dispute. *See* Fed. R. Evid. 201(b).

---

25   [5] In *Lee*, the reviewing court found that the district court was correct in taking judicial notice of
26   "the *fact* of the extradition hearing, the *fact* that a Waiver of Extradition was signed by [Plaintiff]
    and the *fact* that [Plaintiff] purportedly waived his right to challenge his extradition . . . ." *Lee*, 250
27   F.3d at 689-90 (emphasis in original). However, the district court erred by taking judicial notice of
    disputed facts underlying those documents by, for example, presuming the validity of the waiver of
28   extradition which Plaintiff was challenging. *Id.*

8

1    However, the Court notes the absence of the presumption of the truth of the disputed facts therein.

2    *See Lee*, 250 F.3d at 690.

3            The Court GRANTS-IN-PART and DENIES-IN-PART Plaintiffs' Request for Judicial

4    Notice.  As for the erroneous transcript from the Underlying Action dated January 11, 2013, which

5    is Exhibit 2 in support of Plaintiffs' Opposition to the Motion to Dismiss, the Court DENIES

6    Plaintiffs' Request for Judicial Notice.  However, the Court does take judicial notice of the

7    corrected transcript, which was submitted by Clarendon, and includes a later-dated certificate of

8    authentication by the Court Reporter from February 14, 2013.  *See* ECF No. 34-1, at 38.

9    Moreover, the Court need not take judicial notice of Clarendon's proposed Counterclaim, which is

10   already in the record in this case.  *See* ECF No. 28.  Accordingly, Plaintiffs' Request for Judicial

11   Notice of Exhibit 1 is DENIED.

12           **B.**      **Discussion**

13           Plaintiffs allege three causes of action in the SAC: (1) declaratory relief; (2) breach of

14   contract – failure to defend; and (3) breach of the implied covenant of good faith and fair dealing –

15   failure to defend.  *See* ECF No. 24.  The crux of Plaintiffs' claims in the SAC is that Clarendon's

16   "reservation of rights" created a conflict of interest between Green & Hall and Plaintiffs.  SAC

17   ¶ 50.  Consequently, Plaintiffs seek a declaratory judgment stating that they are entitled to paid

18   independent counsel as well as full indemnification.  *See* SAC ¶¶ 51, 55; *see also* SAC at 20.

19           Plaintiffs' new factual allegations in the SAC consist primarily of events in the Underlying

20   Action that occurred after the January 2 Order.  *See* SAC ¶¶ 29-50.  Clarendon denies that the

21   recent events in the Underlying Action have created a conflict of interest that warrants Plaintiffs'

22   entitlement to independent counsel paid for at Clarendon's expense.  *See* Mot. at 1-2.  Clarendon

23   further argues that, because Plaintiffs' SAC has not cured the deficiencies in its previous

24   Complaint, Clarendon's Motion to Dismiss should be granted with prejudice.  *Id.*  For the reasons

25   stated herein, the Court STAYS Plaintiffs' claim for declaratory relief based on full

26   indemnification and GRANTS with prejudice the remainder of Clarendon's Motion to Dismiss.

27   The Court will address its ruling with respect to each cause of action below.

28           **1.**      **First Cause of Action: Declaratory Relief**

9

Plaintiffs first seek a declaration of rights as to: (1) whether Clarendon is required to fully indemnify Plaintiffs in the Underlying Action; and (2) whether Clarendon's *Blue Ridge* Reservation has placed Green & Hall in a conflict of interest under California Civil Code § 2860, which compels the appointment of independent counsel of Plaintiffs' choice. *See* SAC at 20.

The Federal Declaratory Judgment Act provides that, "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, *may* declare the rights and other legal relations of any interested party seeking such a declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a) (emphasis added). "Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such." *Id.* Accordingly, a "controversy that is the subject of declaratory relief must be of a character which admits of specific and conclusive relief by judgment within the field of judicial determination, as distinguished from an advisory opinion upon a particular or hypothetical set of facts." *Gafcon, Inc. v. Ponsor & Assocs.*, 98 Cal. App. 4th 1388, 1403 (2002) (internal quotation marks and citations omitted). "The judgment must decree, not suggest, what the parties may or may not do." *Id.* (internal quotation marks and citations omitted). In addition, declaratory relief "operates prospectively, and not merely for the redress of past wrongs. It serves to set controversies to rest before they lead to repudiation of obligations, invasion of rights or commission of wrongs; in short, the remedy is to be used in the interests of preventive justice, to declare rights rather than execute them." *Id.* (quoting *Babb v. Superior Court*, 3 Cal. 3d 841, 848 (1971); *Travelers v. Louden*, 254 Cal. App. 2d 926, 931 (1967)).

Though "a District Court cannot decline to entertain such an action as a matter of whim or personal disinclination," *Pub. Affairs Assocs., Inc. v Rickover*, 369 U.S. 111, 112 (1962) (per curiam), "[t]he exercise of jurisdiction under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201(a) is committed to the sound discretion of the federal courts," *Huth v. Hartford Ins. Co. of the Midwest*, 298 F.3d 800, 802 (9th Cir. 2002). "Even if the district court has subject matter jurisdiction, it is not required to exercise its authority to hear [a] case." *Huth*, 298 F.3d at 802. Congress, by instituting the Declaratory Judgment Act, "sought to place a remedial arrow in the

district court's quiver; *it created an opportunity, rather than a duty*, to grant a new form of relief to qualifying litigants." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 288 (1995) (emphasis added).

In support of declaratory relief in this action, Plaintiffs contend that Clarendon "agreed to investigate, adjust, defend and/or indemnify Plaintiffs as to any claims against Plaintiffs in the Underlying Action on account of alleged liability caused by an occurrence falling within and/or potentially falling within the coverage defined in the Policy," SAC ¶ 57, yet issued a reservation of rights letter in response to the Underlying Action, SAC ¶ 58. Thereafter, Clarendon allegedly "engaged in a course of conduct of determining that certain claims were uncovered and seeking reimbursement for any defense fees and costs associated with the purportedly uncovered claims." SAC ¶ 58. In addition, Plaintiffs allege that Clarendon is colluding with Green & Hall to Plaintiffs' detriment. SAC ¶ 50.

As a result of these actions, Plaintiffs allege that a dispute has arisen between Plaintiffs and Clarendon as to whether:

> (a) damages alleged in the Underlying Action exceed Policy limits; (b) Plaintiffs should be required to contribute any sums towards settlement in the Underlying Action, and whether Clarendon would be entitled to reimbursement should it settle unilaterally; (c) destructive testing should be allowed and the scope of such testing; (d) Plaintiffs' efforts to obtain destructive testing violates [*sic*] the Policy's cooperation clause; (e) Clarendon's *Blue Ridge* Reservation places whether Green & Hall has a conflict of interest; and (f) Clarendon is required to provide independent counsel under Civil Code § 2860.

SAC ¶ 61.

### a.     Full Indemnification

Plaintiffs first seek a declaratory judgment that Clarendon is required to fully indemnify Plaintiffs in the Underlying Action. In California, an insurer has a "broad duty to defend its insured against claims that create a potential for indemnity." *Montrose Chemical Corp.*, 6 Cal. 4th at 295 (internal quotation marks and citation omitted). Indeed, because an insurer's "duty to defend is broader than the duty to indemnify," an insurer "must defend a suit which *potentially* seeks damages within the coverage of the policy." *Id.* (internal quotation marks and citation omitted) (emphasis in original). However, an insurer may, under certain circumstances, seek

United States District Court
For the Northern District of California

1  reimbursement for defense costs for claims "that are not even potentially covered" by the insurance

2  contract. *Buss*, 16 Cal. 4th at 52-53.

3          To seek reimbursement for non-covered claims in a reasonable settlement under a *Blue*

4  *Ridge* reservation, the insurer must have made: "(1) a timely and express reservation of rights; (2)

5  an express notification to the insureds of the insurer's intent to accept a proposed settlement offer;

6  and (3) an express offer to the insureds that they may assume their own defense when the insurer

7  and insureds disagree whether to accept the proposed settlement." *Blue Ridge Ins. Co.*, 25 Cal. 4th

8  at 502.  While the parties in the Underlying Action have not yet reached a settlement, Clarendon

9  nevertheless reserved its rights because such a settlement is possible. *See* Opp'n at 3 (Plaintiffs

10  arguing that "[t]he Underlying Action could settle before trial, as do the majority of civil cases.").

11          Plaintiffs concede that Clarendon has the right to assert a *Blue Ridge* reservation. *See*

12  Opp'n at 4.  However, Plaintiffs argue that Clarendon still must fully indemnify them in the

13  Underlying Action because their "experts opine that covered property damages exist well in excess

14  of Policy limits." *Id.* (citing SAC ¶ 26).  Therefore, if covered damages do exist in excess of

15  Policy limits, Plaintiffs maintain that Clarendon must fully indemnify them. *Id.*

16          Clarendon argues—and Plaintiffs concede—that, "until the underlying action has been

17  reduced to judgment, it is premature to adjudicate whether there are damages that exceed

18  Clarendon's policy limits." Mot. at 22.  Accordingly, the Court finds that this claim is not ripe for

19  adjudication. *See Texas v. United States*, 523 U.S. 296, 300 (1998) ("A claim is not ripe for

20  adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed

21  may not occur at all.") (internal quotation marks and citation omitted); *see also Bova v. City of*

22  *Medford*, 564 F.3d 1093, 1096 (9th Cir. 2009) (explaining that a claim is not ripe if it rests upon a

23  contingent future event because "if the contingent events do not occur, the plaintiff likely will not

24  have suffered an injury that is concrete and particularized enough to establish the first element of

25  standing.").  Moreover, the Court notes that, given "the nonobligatory nature of the [declaratory

26  relief] remedy" afforded to district courts through the Declaratory Judgment Action, a district court

27  is authorized, in the sound exercise of discretion, to stay or to dismiss an action seeking a

28  declaratory judgment before trial or after all arguments have drawn to a close." *Wilton*, 515 U.S. at

12

1   288; *see also id.* ("If a district court, in the sound exercise of its judgment, determines after a

2   complaint is filed that a declaratory judgment will serve no useful purpose, it cannot be incumbent

3   upon that court to proceed to the merits before staying or dismissing the action.").

4      Here, the parties represent that the trial in the Underlying Action is set for July 29, 2013,

5   though acknowledged during the hearing that this date may change, as it has on multiple occasions

6   in the past.  Thus, given that the claim before this Court cannot proceed until the Underlying

7   Action has been resolved, the Court hereby STAYS Plaintiffs' claim for declaratory relief as it

8   pertains to full indemnification.  *See Wilton*, 515 U.S. at 288 n.2 ("[W]here the basis for declining

9   to proceed is the pendency of a state proceeding, a stay will often be the preferable course, because

10   it assures that the federal action can proceed without risk of a time bar if the state case, for any

11   reason, fails to resolve the matter in controversy.").

12          **b.**  **Conflict of Interest Requiring Independent Counsel**

13      Plaintiffs further seek a declaratory judgment that Clarendon's reservation of rights "has

14   placed Green & Hall in a conflict of interest under Civil Code § 2860," which they allege "compels

15   the appointment of independent counsel of Plaintiffs' choice."  SAC at 20.  California Civil Code

16   § 2860 provides that, "[i]f the provisions of a policy of insurance impose a duty to defend upon an

17   insurer and a conflict of interest arises which creates a duty on the part of the insurer to provide

18   independent counsel to the insured, the insurer shall provide independent counsel to represent the

19   insured . . . ."  Cal. Civ. Code § 2860.  This right to independent counsel paid for by an insurer is

20   generally referred to as "*Cumis* counsel" due to the California Supreme Court's decision in *San*

21   *Diego Navy Fed. Credit Union v. Cumis Ins. Soc'y Inc.*, 162 Cal. App. 3d 358 (1984).  *See James 3*

22   *Corp. v. Truck Ins. Exch.*, 91 Cal. App. 4th 1093, 1100 (2001) ("The *Cumis* opinion was codified

23   in 1987 by the enactment of Civil Code section 2860, which 'clarifies and limits' the rights and

24   responsibilities of insurer and insured as set forth in *Cumis*.") (citations omitted).

25      However, the right to paid, independent counsel does not exist in every case, or even in

26   every case including a reservation of rights.  As noted in *James 3 Corp. v. Truck Ins. Exch.*, 91 Cal.

27   App. 4th 1093 (2001), "[s]ome of the circumstances that may create a conflict of interest requiring

28   the insurer to provide independent counsel include: (1) where the insurer reserves its rights on a

13

**United States District Court**
For the Northern District of California

given issue *and* the outcome of that coverage issue can be controlled by the insurer's retained counsel;" (2) "where the insurer insures both the plaintiff and the defendant;" (3) "where the insurer has filed suit against the insured, whether or not the suit is related to the lawsuit the insurer is obligated to defend;" (4) "where the insurer pursues settlement in excess of policy limits without the insured's consent and leav[es] the insured exposed to claims by third parties;" and (5) "any other situation where an attorney who represents the interests of both the insurer and the insured finds that his or her representation of the one is rendered less effective by reason of his [or her] representation of the other." *Id.* at 1101 (internal quotation marks and citations omitted). Yet, as further explained in *Gafcon, Inc.*, "[i]t is only when the basis for the reservation of rights is such as to cause assertion of factual or legal theories which undermine or are contrary to the positions to be asserted in the liability case that a conflict of interest sufficient to require independent counsel, to be chosen by the insured, will arise." *Gafcon, Inc.*, 98 Cal. App. 4th at 1421-22. Moreover, "[a] mere possibility of an unspecified conflict does not require independent counsel." *Dynamic Concepts, Inc. v. Truck Ins. Exch.*, 61 Cal. App. 4th 999, 1007 (1998). The conflict of interest must be "*significant*, not merely theoretical, *actual*, not merely potential." *Id.* (emphasis added); *see also Lehto v. Allstate Ins. Co.*, 31 Cal. App. 4th 60, 71 (1994) ("Allstate ... notes that, so long as there existed only a potential conflict of interest between its two insureds, it was not required to retain separate counsel for father and son. . . . [T]he interests of [the two insureds], while potentially adverse, were not in actual conflict.").

In its January 2 Order, the Court found that the facts as alleged in the FAC failed to rise above the speculative level that an actual, significant conflict of interest existed sufficient to trigger Plaintiffs' right to paid independent counsel. In the SAC, Plaintiffs seek to cure this deficiency by alleging that an actual conflict of interest exists because of both Clarendon's reservation of rights as well as the fact that "Green & Hall is in a position [*sic*] control the defense in a manner that can directly impact coverage." SAC ¶ 50. Plaintiffs also allege that "Green & Hall is defending the Underlying Action in a manner calculated to assist Clarendon in its coverage position . . . and Green & Hall's representation of Plaintiffs is rendered less effective by its concurrent representation of Clarendon." *Id.*

14

1      Plaintiffs' primary factual assertions to support these allegations are: (1) Clarendon's

2   limitation of the cross-complaint, filed in the Underlying Action, to non-covered damages, *see*

3   SAC ¶¶ 29-50; (2) Clarendon's subsequent dismissal of the cross-complaint, SAC ¶ 49; and (3)

4   Green & Hall's position in regard to Ms. Klausner's Motion to Associate, *see* SAC ¶ 44; *see also*

5   Opp'n at 6.  In addition, Plaintiffs include in the SAC further information about destructive testing,

6   which Plaintiffs allege enables Green & Hall to undertake defense strategies directly bearing on the

7   coverage dispute.  *See* SAC ¶¶ 15-16.  The Court is not persuaded that Plaintiffs' new allegations

8   suffice to state a plausible claim for a right to *Cumis* counsel.

9      First, the Court does not find that an actual, significant conflict of interest has been created

10  by Green & Hall's filing of a cross-complaint against subcontractors in the Underlying Action,

11  which defense counsel subsequently dismissed.  Plaintiffs specifically allege that the conflict was

12  created by Green & Hall's inclusion of only non-covered damages in the cross-complaint.  *See*

13  SAC ¶ 34 ("It is impossible for Green & Hall to prosecute the Cross-Complaint without

14  ascertaining claims deemed not covered.  By filing such a Cross-Complaint, Green & Hall has a

15  clear conflict of interest.").  According to Plaintiffs, "[g]iven that the Cross-Complaint was limited

16  to non-covered claims, Green & Hall would have had to investigate which defects did not have

17  resultant damage." Opp'n at 5.  Therefore, Plaintiffs argue that Green & Hall "waded into

18  coverage," and, consequently, "[t]he poisoned fruit was already consumed." Opp'n at 7, 10.

19     Despite Plaintiffs' rhetoric regarding poisoned fruit, the Court notes that nothing in the

20  cross-complaint itself appears to assert "factual or legal theories which undermine or are contrary

21  to the positions to be asserted" in the Underlying Action, *see Gafcon, Inc.*, 98 Cal. App. 4th at

22  1422.  Importantly, the cross-complaint does not specifically identify which defects did or did not

23  have resultant damage, but rather includes only generic language regarding coverage more broadly.

24  *See, e.g.*, ECF No. 24-2 (Cross-Compl. ¶ 8) ("The Scope of this Cross-Complaint against the

25  Subcontractor Cross-Defendants identified herein is for any and all damages arising from repair or

26  replacement of each subcontractors' own defective work product that have not caused resultant

27  property damage[.]").  Further, while Plaintiffs "[p]resum[e]" that Green & Hall conducted some

28  investigation into covered and non-covered claims prior to filing the cross-complaint, Plaintiffs'

15

allegations do not appear to rise above the level of mere speculation. *See, e.g.*, Opp'n at 5 (stating that Plaintiffs "[p]resum[e]" that "Green & Hall conducted some investigation before filing the Cross-Complaint in order to ascertain which defects were allocable to which subcontractors."); *but see Iqbal*, 556 U.S. at 678 ("The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."). Further, since Green & Hall subsequently dismissed this cross-complaint, it is not clear why any harm that hypothetically could have been created by litigating this action is still possible. *Cf.* SAC ¶ 32 (alleging that *had* the Cross-Complaint been fully litigated, it *would have* caused a "collateral estoppel effect" because of targeting non-covered property damage and requiring a determination as to which defects were and were not covered) (emphasis added). Thus, the cross-complaint no longer appears to pose an "actual" or "significant" threat to Green & Hall's ability to represent Plaintiffs' interests fully. *See Dynamic Concepts*, 61 Cal. App. 4th at 1007. While Plaintiffs nevertheless maintain that "[t]his is a bell that cannot be unrung," *see id.*, neither Plaintiffs' SAC nor Plaintiffs' opposition brief provides any support for this allegation that rises above mere speculation.[6]  As such, the Court does not find that Plaintiffs are entitled to *Cumis* counsel on this basis.

---

[6]  Plaintiffs did argue during the hearing that *Schaefer v. Elder*, 157 Cal. Rptr. 3d 654 (2013), recently established that where the insurer and the insured have different incentives as to the treatment of third party workers, a conflict of interest exists that requires the appointment and funding of independent counsel. However, Plaintiffs appear to overstate the holding for this case. In *Schaefer*, an insurer provided representation to an insured, with a reservation of rights, for an action brought by a third party. *Id.* at 656. A special provision of the contract, which was the focus of the insured's motion in the trial court, turned on whether the workers who did the allegedly defective work were the insured's employees or independent contractors. *Id.* at 658. Thus, in order to establish liability, the underlying plaintiff would have to establish the relationship between the insured and his employees: "Whether it was an employee or an independent contractor . . . one or the other must be proven." *Id.* at 659. Consequently, the Court found that a specific, actual conflict existed between the interests of the insurer and the insured because the defense firm had an ethical duty to the insured to try to establish that the workers were employees and, at the same time, had an ethical duty to the insurer to try to establish that the workers were independent contractors. *Id.* This case is distinct as, for the reasons discussed herein, Plaintiffs have failed to allege sufficient facts to demonstrate how Green & Hall has "assert[ed] . . . factual or legal theories which undermine or are contrary to the positions to be asserted in the liability case." *Gafcon, Inc.*, 98 Cal. App. 4th at 1421-22. For instance, Plaintiffs emphasize that the Clarendon policy has an exception for certain non-covered damages, and allege that Green & Hall has made decisions about the location of destructive testing that implicate the allocation of covered and non-

16

1      Relatedly, the Court does not find that Green & Hall's decision to dismiss the cross-

2   complaint and then take no further action against subcontractors creates a right to *Cumis* counsel.

3   As the California Court of Appeal noted in *James 3 Corp.*, if an insurance policy does not impose

4   on an insurer the duty to prosecute claims of the insured against third parties, an insurer does not

5   have a duty to prosecute an insured's affirmative relief counterclaims or cross-complaints.  91 Cal.

6   App. 4th at 1105.  Here, nothing in the Clarendon Policy requires Clarendon to prosecute

7   Plaintiffs' claims against third parties.  Therefore, the dismissal of the cross-complaint against

8   subcontractors also does not suffice to trigger a *Cumis* conflict.  *See* Mot. at 17.[7]

9      Further, Green & Hall's lack of consent to Ms. Klausner's Motion to Associate does not

10   trigger a right to *Cumis* counsel.  As the California Court of Appeal stated in *Truck Ins. Exch. v.*

11   *Unigard Ins. Co.*, 79 Cal. App. 4th 966 (2000), "the insured-insurer relationship is based on the

12   premise that, . . . '[w]hen the insurer provides a defense to its insured, the insured has no right to

13   interfere with the insurer's control of the defense[.]'"  *Id.* at 979 (quoting *Safeco Ins. Co. v.*

14   *Superior Court*, 71 Cal. App. 4th 782, 787 (1999)); *see also James 3 Corp.*, 91 Cal. App. 4th at

15   1111 ("an insurer has the right to control the defense it provides its insured so long as there is no

16   conflict of interest").  In this case, Ms. Klausner has made several demands for the paid

17   appointment of independent counsel, sent multiple letters to Green & Hall commanding that

18   defense counsel file a cross-complaint against subcontractors on Park Townsend's behalf, and filed

19   an unapproved Motion to Associate.  *See, e.g.*, SAC ¶¶ 18, 29, 30, 37, 38, 39.  In light of these

20   covered damages.  Opp'n at 8.  Yet, as discussed *infra*, Green & Hall's choices about specific
    destructive testing strategies appear intended to limit a finding of liability and damages more
21   generally.  As Plaintiffs have not established how Green & Hall's approach to destructive testing,
    or any other issue alleged, hinders Green & Hall's ability to defend Plaintiffs' and Defendants'
22   shared interests in the Underlying Action, the Court thus finds this case distinguishable from
    *Schaefer*.
23
    [7]  Moreover, contrary to Plaintiffs' arguments, the fact that Clarendon also insured some of the
24   subcontractors against whom the Plaintiffs may bring a claim does not create an "actual" conflict
    of interest.  *Dynamic Concepts*, 61 Cal. App. 4th at 1007.  For example, in *Travelers Property v.*
25   *Centex Homes*, Case No. 10-02757, 2011 WL 1225982, at *8 (N.D. Cal. Apr. 1, 2011), the plaintiff
    was an insured party who brought separate cross-actions against subcontractors also covered by the
26   defendant-insurer.  The Court explained that one insured party's claim for indemnification against
    another of the insurer's clients did not create an actual conflict of interest because the insurer
27   would have the same interests in defending all of the insured entities against the allegations of the
    plaintiffs in the original action in both lawsuits.  *Id.*
28

Case No.: 12-CV-04412-LHK
ORDER GRANTING-IN-PART MOTION TO DISMISS; GRANTING MOTION TO AMEND COUNTERCLAIM

United States District Court
For the Northern District of California

1    actions, Clarendon allegedly did not believe that Ms. Klausner was contributing positively to

2    Plaintiffs' defense and did not want her to be associated in the case.  *See* Mot. at 20.  Given these

3    divergent positions, Green & Hall expressed concerned about ethically representing both Plaintiffs

4    and Clarendon, and sought to withdraw as counsel if Ms. Klausner associated in the case.  SAC

5    ¶ 12.  However, as soon as Ms. Klausner's motion to associate was denied, Green & Hall no longer

6    faced the ethical conundrum, and withdrew its motion to be relieved as counsel.  Under these

7    circumstances, the Superior Court judge "d[id] not consider Green & Hall to be in danger of

8    breaching its professional responsibility" to its clients.  ECF No. 30-2, Ex. 6 at 83.  The Court

9    agrees with the Superior Court's assessment.

10         Ultimately, Plaintiffs tie their assertions pertaining to Green & Hall's prosecution of the

11   cross-complaint and opposition to Ms. Klausner's Motion to Associate to their assertion that Green

12   & Hall has a general ethical conflict of interest which precludes the adequate representation of

13   Plaintiffs.  *See Golden Eagle Ins. Co. v. Foremost Ins. Co.*, 20 Cal. App. 4th 1372, 1396 (1993)

14   ("[T]he governing principle underlying *Cumis* and section 2860 is the attorney's ethical duty to the

15   clients."); *see id.* (holding that, when an insurer and insured share an attorney, this ethical duty is

16   compromised "whenever their common lawyer's representation of the one is rendered less effective

17   by reason of his representation of the other.") (quoting *Spindle v. Chubb/Pacific Indemnity Group*,

18   89 Cal. App. 3d 706, 713 (1979)).  Plaintiffs argue that, as in *Golden Eagle*, Green & Hall's

19   representation is tainted by an irreconcilable conflict of interest because Plaintiffs' objective is to

20   establish covered damages, while Clarendon's is to establish non-covered damages.  Opp'n at 9.

21   Plaintiffs further contend that Green & Hall's compliance with Clarendon's instructions at

22   important stages of the Underlying Action demonstrates its blatant partiality and inability to

23   provide adequate neutral representation to Park Townsend.  Opp'n at 10-11.  *Golden Eagle* is

24   distinguishable from this case, however, because the conflict of interest was based on counsel's

25   pursuit of a settlement agreement in excess of policy limits, which the insured party had already

26   expressly rejected.  20 Cal. App. 4th at 1396.  Here, Plaintiffs have not indicated that Green & Hall

27   has acted in opposition to Plaintiffs' wishes in any way that would attribute liability to or incur

28   costs for Park Townsend.  Rather, despite Plaintiffs' allegations regarding Clarendon and Park

Townsend's opposing interests in the final allocation of damages, their objective as to liability in the Underlying Action is the same: to defend against the underlying plaintiffs' attempts to attach liability. *See* Mot'n at 2.  Importantly, Park Townsend "has not alleged that defense counsel could redistribute liability between covered and uncovered claims, which were asserted by the underlying Plaintiff."  Mot. at 8.

Plaintiffs further allege that a conflict of interest has arisen because Green & Hall's strategic decisions about destructive testing will determine the extent of resultant property damage, to Plaintiffs' disadvantage.  *See* SAC ¶ 15 (alleging that "defense counsel's decision on the location and type of destructive testing would determine the extent of the resultant property damage found at the Project, as certain types of defects alleged in the Underlying Action would necessarily entail resultant property damage while other types of defects would not typically result in property damage as defined in the Underlying Action"); *see also* SAC ¶ 16 (listing examples of locations where "resultant damage in the form of water intrusion and cracking" might be ascertained and identified).  Defendants counter that Plaintiffs have not demonstrated how any "past or present destructive [testing] has affected the outcome of a coverage issue."  Reply at 8.  Consequently, Defendants contend that the additional facts included in the SAC do not suffice to support a reasonable inference that defense counsel's approach to destructive testing demonstrates any conflict of interest.  The Court agrees.  While Plaintiffs' SAC does elaborate further on the nature of destructive testing itself and provides examples of the locations at which destructive testing might be conducted, these additional factual details are only that—examples.  Moreover, the Court finds persuasive Clarendon's point that, "[i]f the genesis of a claimed conflict rests on an assertion by the insured that more extensive destructive testing needs to go forward to ascertain the extent of resultant damage from a given defect, while insurer-retained defense counsel does not believe such is tactically wise as destructive testing may lead to more evidence of liability and greater damage exposure, then such a conflict is merely a difference of tactical opinion."  Mot. at 24.  As Clarendon, the insurer, is entitled to control the defense it provides, Clarendon has "the right to determine what measures are cost effective, bearing in mind liability and indemnity exposure."  *James 3 Corp.*, 91 Cal. App. 4th at 1103 n.3.  Thus, Plaintiffs' allegations regarding destructive

testing still do not present "more than a sheer possibility" that Clarendon has acted in a way that creates a conflict of interest sufficient to trigger paid, independent counsel. *Iqbal*, 556 U.S. at 678; *Dynamic Concepts*, 61 Cal. App. 4th at 1007.[8]

Thus, the Court finds that Plaintiffs still have not shown in what specific way Green & Hall could affect liability in the Underlying Action or control the outcome of the damage issue to Park Townsend's detriment, absent committing malpractice. Thus, the SAC fails to state sufficient facts to support a reasonable inference that Clarendon is liable for the misconduct alleged. *See Iqbal*, 556 U.S. at 678; *Vaughn*, 649 F.3d at 1064. Accordingly, the Court GRANTS with prejudice Clarendon's Motion to Dismiss Plaintiffs' claim for declaratory relief based on the alleged *Cumis* conflict. *See Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1058 (9th Cir. 2011) ("[T]he district court's discretion to deny leave to amend is particularly broad where plaintiff has previously amended the complaint.") (internal quotation marks and citation omitted); *see also Carvalho*, 629 F.3d at 892 (holding that a court "may exercise its discretion to deny leave to amend due to . . . 'repeated failure to cure deficiencies by amendments previously allowed . . . '") (citation omitted).

### 2. Second Cause of Action: Breach of Contract

Plaintiffs also allege that Clarendon's *Blue Ridge* reservation necessitates the appointment and funding of independent counsel. SAC ¶¶ 64, 69. As in the FAC, Plaintiffs allege that Clarendon's failure to appoint and fund such counsel has breached its contractual duty to fully defend Plaintiffs, SAC ¶ 66, as a result of which they have "incurred substantial attorneys' fees and

---

[8] Plaintiffs also allege in the SAC that they are entitled to independent counsel because Clarendon reserved its rights as to negligent misrepresentation, presumably the non-covered cause of action in the Underlying Action. SAC ¶ 14. Defendants respond that the negligent misrepresentation claim is derivative of the other causes of action, and that Green & Hall cannot shift liability in the Underlying Action between covered and uncovered claims, Mot. at 2; *see also* Mot. at 8 (arguing that "Defense counsel is not in any position to skew Park Townsend's defense whereby Park Townsend could not be liable for negligence (because its work was not defective) and somehow also be liable for negligent misrepresentation (because its work was defective and it had no reasonable basis to believe its work was not defective). Plaintiffs do not respond to this argument. The Court agrees that Plaintiffs' contention as to the effect of Clarendon's reservation of rights on negligent misrepresentation is no more than a mere "conclusory allegation[]."*Adams*, 355 F.3d at 1183.

20

costs, experts' fees and costs, court costs and other expenses in defense of the Underlying Action."
SAC ¶ 71.

As the Court held in the January 2 Order, the defendant in this case, like the insurers in
*Blanchard v. State Farm Fire & Casualty Co.*, 2 Cal. App. 4th 345 (1991), and *Dynamic Concepts,
Inc. v. Truck Ins. Exch.*, 61 Cal. App. 4th 999 (1998), did not breach its contract with Plaintiff
because, fundamentally, the reservation of rights did not create a conflict of interest that required
the appointment of independent counsel.[9] Accordingly, the Court GRANTS with prejudice
Defendants' Motion to Dismiss Plaintiffs' Second Cause of Action for Breach of Contract.

### 3.    Third Cause of Action: Breach of Implied Covenant of Good Faith and Fair Dealing

Last, Plaintiffs allege that "Clarendon breached the implied covenant of good faith and fair
dealing by refusing to *fully* defend the Underlying Action and by refusing . . . to protect
[Plaintiffs'] interests by having Ms. Klausner associate into the Underlying Action." SAC ¶ 74
(emphasis in original). As the Court explained in the January 2 Order, "California law implies a
covenant of good faith and fair dealing in every insurance contract," *Anguiano v. Allstate Ins.
Co.*, 209 F.3d 1167, 1169 (9th Cir. 2000) (per curiam) (citing *PPG Indus., Inc. v. Transamerica
Ins. Co.*, 20 Cal.4th 310, 312 (1999)). "This duty extends to an insurance company's insureds,"
*Anguiano*, 209 F.3d at 1169, and "requires each contracting party to refrain from doing anything to
injure the right of the other to receive the benefits of the agreement," *Egan v. Mutual of Omaha
Ins. Co.*, 24 Cal.3d 809, 818 (1979). "Absent . . . [a] primary right [that has been breached] . . . the
*auxiliary* implied covenant has nothing upon which to act as a supplement, and should not be

---

[9] According to Plaintiffs, the question of whether a *Blue Ridge* reservation necessitates the
appointment of *Cumis* counsel is a matter of first impression in California. Opp'n at 1. However,
as explained in the Court's Order of January 2, at 15-16, 16 n.5, California courts *have* previously
found that a reservation of rights does not require the appointment of *Cumis* counsel. *See
Blanchard*, 2 Cal. App. 4th at 347, 349 (holding that, when insurer assumed the defense of the
insured general contractor, there was no "conflict of interest of the type requiring appointment of
independent counsel," despite insurer's reservation of rights as to the extent of covered damages);
*Dynamic Concepts*, 61 Cal. App. 4th at 1001 (finding that "no breach of the insurer's duty of
defense ha[d] been established" despite the insurer's reservation of rights). As the Court
previously observed, the fact that both cases predate *Blue Ridge*, and therefore do not explicitly
reference that case, does not negate their relevance to the issue of whether a reservation of rights
inherently constitutes a conflict of interest requiring the appointment of independent counsel.
January 2 Order at 16, n.5.

Case No.: 12-CV-04412-LHK
ORDER GRANTING-IN-PART MOTION TO DISMISS; GRANTING MOTION TO AMEND COUNTERCLAIM

1    endowed with an existence independent of its contractual underpinnings." *Love v. Fire Ins. Exch.*,

2    221 Cal. App. 3d 1136, 1153 (1990).

3          As in Plaintiffs' previous Complaint, the viability of this cause of action ultimately hinges

4    on its right to independent counsel due to a conflict of interest. *See* Jan. 2 Order at 17; *see also*

5    Opp'n at 18 (contending that Plaintiffs' third cause of action, as well as the second cause of action,

6    as "bootstrapped upon the Declaratory Relief claim").  Because Plaintiffs have failed to set forth

7    facts that support a reasonable inference that a conflict of interest exists, Plaintiffs' SAC does not

8    support the corresponding claim that Clarendon breached the covenant of good faith and fair

9    dealing.  Accordingly, the Court GRANTS with prejudice Defendants' Motion to Dismiss

10   Plaintiffs' claim for breach of the implied covenant of good faith and fair dealing.

11         In conclusion, the Court STAYS Plaintiffs' claim for declaratory relief based on full

12   indemnification pending resolution of the Underlying Action.  However, the Court GRANTS the

13   remainder of Clarendon's Motion to Dismiss the SAC with prejudice.  *See Cafasso, U.S. ex rel.*,

14   637 F.3d at 1058; *see also Carvalho*, 629 F.3d at 892 (holding that a court "may exercise its

15   discretion to deny leave to amend due to . . .'repeated failure to cure deficiencies by amendments

16   previously allowed . . . '") (citation omitted).

17   **IV.    MOTION TO AMEND COUNTERCLAIM**

18         Clarendon also moves to file a First Amended Counterclaim to add additional allegations of

19   breaches of the "cooperation" clause which have occurred subsequent to the filing of the original

20   Counterclaim.  *See* Mot. to Amend at 2.  Clarendon alleges that Park Townsend has breached the

21   duty to cooperate by: (1) impeding Green & Hall's effective representation of Park Townsend by

22   threatening to sue Clarendon-retained defense attorney, Edward Huguenin, for legal malpractice,

23   and (2) disclosing confidential information in the Second Amended Complaint.  *Id.* at 14, 15.[10]

---

[10]  In connection with Defendants' Motion to Amend Counterclaim, Defendants also request
judicial notice of the following documents: (1) the Motion to Associate Counsel filed by Park
Townsend on November 21, 2012; (2) the Opposition to the Motion to Associate Counsel filed by
Clarendon on December 27, 2012; (3) the Declaration in support of Opposition to Motion to
Associate Counsel filed by Clarendon on December 27, 2012; (4) the Request for Judicial Notice in
Support of Opposition to Motion to Associate Counsel filed by Clarendon on December 27, 2012;
(5) the Supplemental Request for Judicial Notice in support of Opposition to Motion to Associate
Counsel filed by Clarendon on January 2, 2013; (6) the Reply to Opposition to Motion to Associate
Counsel filed by Park Townsend on January 4, 2013; (7) the Request for Judicial Notice in support

Case No.: 12-CV-04412-LHK
ORDER GRANTING-IN-PART MOTION TO DISMISS; GRANTING MOTION TO AMEND COUNTERCLAIM

1    Plaintiffs do not appear to oppose Clarendon's Motion to Amend Counterclaim based on

2 disclosure of confidential information.  Therefore, the Court GRANTS Clarendon leave to amend

3 its counterclaim on this basis.  *See* Fed. R. Civ. P. 15(a).

4    However, Plaintiffs do oppose Clarendon's proposed counterclaim based on alleged witness

5 intimidation of Mr. Huguenin.  Clarendon alleges that Dan White, an attorney retained by Park

6 Townsend, threatened Mr. Huguenin with a legal malpractice claim after he filed a declaration "to

7 correct misrepresentations made by Park Townsend's counsel in the course of seeking to associate

8 its personal counsel, Alyssa Klausner, into the state court construction defect lawsuit."  Mot. to

9 Amend at 7; *see id.* at 10 (alleging that Dan White called Mr. Huguenin to "look into some

10 professional malpractice issues" with Green & Hall's representation of Park Townsend).

11 Clarendon contends that Mr. White's communications with Mr. Huguenin constituted witness

12 intimidation and evidence that Park Townsend is an uncooperative legal client in breach of its duty

13 to cooperate.  *See id.* at 10-13.

14    Plaintiffs argue that Clarendon's proposed amended counterclaim is improper and futile

15 because: (1) allegations of *uncharged* criminal conduct are subject to a motion to strike; (2) a pre-

16 litigation demand is absolutely privileged under California Civil Code § 47(b); and (3) the

17 proposed amended counterclaim fails to state a claim.  *See* Opp'n to Amend. at 2.  Plaintiffs argue

18 that, despite the liberal standards afforded to motions for leave to amend, leave may be denied if

19 the proposed amendment is futile or would be subject to dismissal.  *Id.* at 2 (citing *Carrico v. City*

20 *& County of San Francisco*, 656 F.3d 1002, 1008 (9th Cir. 2011), and *FDIC v. Conner*, 20 F.3d

21 1376, 1385 (5th Cir. 1994)).  The Court does not find these arguments to be persuasive.

---

of Reply to Opposition to Motion to Associate Counsel filed by Park Townsend on January 4, 2013; (8) the Notice of Lodgement of Transcript in support of Reply to Opposition to Motion to Associate Counsel filed by Park Townsend on January 8, 2013; (9) the Declaration of Edward Huguenin in Response to Reply to Opposition to Motion to Associate Counsel filed on January 9, 2013; (10) Objection to the Declaration of Edward Huguenin in Response to Reply to Opposition to Motion to Associate Counsel filed by Park Townsend on January 9, 2013; (11) Order after Hearing on January 11, 2013.  As all of these documents are part of the public record, the Court GRANTS Clarendon's Request for Judicial Notice of Exhibits 1 through 11 in support of Clarendon's Motion to Amend the Counterclaim pursuant to Rule 201(b) of the Federal Rules of Evidence.  *See* RJN Supp. Mot. to Amend at 2; *see* Part III.A *supra*.  However, the Court notes the absence of the presumption of the truth of the disputed facts therein.  *See Lee*, 250 F.3d at 690.

23

1     Although Plaintiffs allege that criminal allegations do not belong in civil proceedings, *see*

2    Opp'n to Amend. at 3, Clarendon is not seeking to criminally prosecute Park Townsend under

3    federal or state laws for witness intimidation.  *See* Reply to Amend. at 10.  Therefore, this does not

4    provide a sufficient reason to deny Clarendon leave to amend its counterclaim.

5     Plaintiffs also contend that Mr. White's phone call to Mr. Huguenin was privileged under

6    California Civil Code § 47(b), which protects statements made in any judicial proceeding.  Cal.

7    Civ. Code § 47(b); *see* Opp'n to Amend. at 4.  Section 47(b) shields any "publication or broadcast"

8    made "[i]n any . . . judicial proceeding."  Cal. Civ. Code § 47(b).  The privilege extends to

9    communications which have some relation to "a proceeding that is *contemplated in good faith and*

10    *under serious consideration*."  *Edwards v. Centex Real Estate Corp.*, 53 Cal. App. 4th 15, 32

11    (1997) (emphasis added).  In *Aronson v. Kinsella*, 58 Cal. App. 4th 254 (1997), the California

12    Court of Appeal established that a "prelitigation demand letter is precisely the type of statement

13    that the litigation privilege is intended to protect since it represents the first step toward litigation

14    and the purpose of the litigation privilege is to provide 'the utmost freedom of access to the courts

15    without fear of being harassed subsequently by derivative tort actions.'"  *Id.* at 270.

16     However, the litigation privilege does not apply to statements made to deprive a party of the

17    use of documentary evidence under California Civil Code Section 47(b)(2).  *See* Cal. Civ. Code

18    § 47(b)(2) ("This subdivision does not make privileged any communication made in furtherance of

19    an act of intentional destruction or alteration of physical evidence undertaken for the purpose of

20    depriving a party to litigation of the use of that evidence . . . .").  Clarendon contends that, "[i]f the

21    purpose of Mr. White's telephone call on January 9, 2013, was to cause Mr. Huguenin to withdraw

22    his declaration, then Section 47 does not immunize Park Townsend."  Reply to Amend. at 11.[11]

23

24    ---

[11] Defendants also submitted the Declaration of Henry Su, "solely to demonstrate that Clarendon

25    had a factual basis to amend the Counterclaim in good faith."  Reply at 2; *see* ECF No. 27-1.
Plaintiffs separately submitted an objection to paragraph 4 of the Declaration, contending that the

26    Declaration was improper because it included "inadmissible hearsay" because Mr. Su testified
about the January 11, 2013 hearing, which Mr. Su did not attend, and about a telephone call to

27    which Mr. Su was not a party, and telephone records that were not attached to Mr. Su's declaration.
*See* ECF No. 31-1.  Plaintiffs also objected on the basis of the best evidence rule.  *Id.*  Clarendon

28    then included as an attachment to its Reply a correct transcript in an effort to support Mr. Su's

United States District Court
For the Northern District of California

1   The Court declines to assess the parties' competing versions of events in regard to the phone call to

2   Mr. Huguenin.  At this state of the litigation—merely assessing whether Clarendon may amend the

3   counterclaim—the Court finds sufficient the fact that this allegation may not be clearly futile.

4          Plaintiffs also contend that Clarendon's cause of action is barred by California's anti-

5   SLAPP statute.  Opp'n to Amend. at 5; *see* Cal. Civ. Proc. § 425.16(e)(1) ("[An] act in furtherance

6   of a person's right of petition or free speech under the United States or California Constitution in

7   connection with a public issue includes . . . any written or oral statement or writing made in

8   connection with an issue under consideration or review by a . . . judicial body, or any other official

9   proceeding authorized by law").  In denying a motion to strike under the anti-SLAPP statute, the

10  Court need find only that a party has "substantiated a legally tenable claim through a facially

11  sufficient evidentiary showing" which is not "defeated by [the opposing party's contrary showing]

12  as a matter of law." *Wilson v. Parker, Covert, & Chidester*, 28 Cal. 4th 811, 821 (2002).  The

13  statute's purpose is to "provide[] an efficient means of dispatching, early on in the lawsuit, [and

14  discouraging, insofar as fees may be shifted,] a [party's] meritless claims." *Equilon Enter. v.*

15  *Consumer Cause, Inc.*, 29 Cal. 4th 53, 63 (2002) (internal quotation marks and citation omitted).

16  Plaintiffs argue that, so long as Mr. White's telephone call is conduct falling within the scope of

17  actions covered by the statute, it is immunized from inclusion in Defendants' allegations.  Opp'n to

18  Amend. at 4.  However, since Mr. White's conduct may not fall within the scope of actions

19  covered by the statute, Mr. White's telephone call may form part of a cognizable claim as to

20  Plaintiffs' breach of the duty to cooperate.  Therefore Clarendon's allegations are not clearly

21  rendered futile by Plaintiff's assertion of the anti-SLAPP statute.

22          Finally, Plaintiffs assert generally that Clarendon's proposed amendments fail to state a

23  claim.  Opp'n to Amend. at 5-6.  Plaintiffs argue that Clarendon's claims regarding witness

24  intimidation are "greatly attenuated from the facts," and "not remotely plausible."  *Id.*.  In addition,

25  Plaintiffs argue that "no facts are alleged to show prejudice to Clarendon . . . to such an extreme

26  that Clarendon would be justified in withdrawing the defense in the entirety and recouping defense

27

28  statements in his original declaration.  *See* ECF No. 32-1.  The Court SUSTAINS Plaintiffs'
    objection to paragraph 4 of the Su Declaration.

25

Case No.: 12-CV-04412-LHK
ORDER GRANTING-IN-PART MOTION TO DISMISS; GRANTING MOTION TO AMEND COUNTERCLAIM

**United States District Court**
For the Northern District of California

1   costs." *Id*. at 6.  The Court does express skepticism regarding the plausibility of Clarendon's claim

2   for a failure to cooperate based on alleged witness intimidation.  Nevertheless, given the liberal

3   standard that courts are supposed to apply when granting leave to amend pursuant to Rule 15(a),

4   *see Lopez*, 203 F.3d at 1127, the Court declines to deny Clarendon leave to amend at this time.

5   Plaintiffs' arguments appear better suited for a Motion to Dismiss and/or a Motion for Summary

6   Judgment.

7   Accordingly, the Court GRANTS Clarendon's Motion to Amend Counterclaim.

8   **V.     CONCLUSION**

9   For the foregoing reasons, the Court STAYS Plaintiffs' first cause of action seeking

10   declaratory relief for full indemnification, but GRANTS the remainder of Clarendon's Motion to

11   Dismiss Plaintiffs' SAC with prejudice.  In addition, the Court GRANTS Clarendon's Motion to

12   Amend Counterclaim.

13   During the hearing on these motions, the parties stated that if the Court stayed Plaintiffs'

14   claim for declaratory relief for full indemnification pending resolution of the Underlying Action

15   and granted Clarendon's Motion to Amend Counterclaim, then the parties would stipulate to stay

16   the entire case pending resolution of the Underlying Action.  The Court hereby Orders the parties

17   to file by July 17, 2013, such stipulation or a joint statement as to why their positions have

18   changed.

19   **IT IS SO ORDERED.**

20   Dated:  July 10, 2013

21   *Lucy H. Koh*

22   LUCY H. KOH
    United States District Judge

23

24

25

26

27

28

26

Case No.: 12-CV-04412-LHK
ORDER GRANTING-IN-PART MOTION TO DISMISS; GRANTING MOTION TO AMEND COUNTERCLAIM